## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLORADO

| | |
|---|---|
| NAOMI PEÑA VILLASANO,<br><br>   *Plaintiff*,<br><br>v.<br><br>GARFIELD COUNTY SCHOOL DISTRICT 16; LYNN J. SHORE, *in his official capacity as President of the Garfield County School District 16 Board of Education*; KIMBERLY S. WHELAN, *in her official capacity as Vice-President of the Garfield County School District 16 Board of Education*; VINCENT T. TOMASULO, *in his official capacity as Secretary/Treasurer of the Garfield County School District 16 Board of Education*; STACI R. MCGRUDER, *in her official capacity as a Director of the Garfield County School District 16 Board of Education*; KEITH GRONEWOLLER, *in his official capacity as a Director of the Garfield County School District 16 Board of Education*; JENNIFER BAUGH, *in her official capacity as Superintendent of Garfield County School District 16*; and KELLY MCCORMICK, *in his official capacity as Principal of Grand Valley High School*,<br><br>   *Defendants*. | CIVIL ACTION NO. |

## **VERIFIED COMPLAINT**
## **FOR INJUNCTIVE AND DECLARATORY RELIEF**

### I. INTRODUCTION

1. For years, the Garfield County School District 16 ("the District") has allowed its students to wear sashes, flags, and other personalized decorations with their caps and gowns at high school graduation ceremonies.

2. However, when Plaintiff Naomi Peña Villasano ("Naomi"), an honors student, asked to wear a sash at the 2023 graduation that was decorated with the American flag and the Mexican flag, the District said no.

3. The District will not allow Naomi to wear the sash honoring her Mexican American heritage but the District will allow students at the graduation ceremony to wear sashes honoring Pacific Islander heritage, Native American heritage and enlistment in the military, as well as decorate their mortar boards in any fashion the students choose consistent with the District's cap decoration rule.

4. The District will hold Naomi's graduation ceremony on Saturday, May 27, 2023, and has informed Naomi that she cannot cross the graduation stage and receive her diploma wearing her sash.

5. Without intervention by the Court, Naomi will be forced to choose between exercising her right to free speech and receiving her diploma on the graduation stage in front of her community and family members.

## II. JURISDICTION

6. Jurisdiction for Plaintiff's claim under the First Amendment and Fourteenth Amendments to the U.S. Constitution is based upon 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

7. Jurisdiction for Plaintiff's claim for costs and attorneys' fees is based upon 42 U.S.C. § 1988.

8. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's claims under the Colorado Constitution's Free Speech Clause (Colo. Const. art. II, § 10) and the Colorado statutory requirement that all boards of education adopt a policy to ensure the right of students to display the flag of the United States on their persons (Colo. Rev. Stat.

§ 22-32-109(1)(ii)).

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because all Defendants are residents of Colorado. Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2), because the events which gave rise to the claims took place in this federal district.

### III.   PARTIES

10. Plaintiff NAOMI PEÑA VILLASANO is a high school senior who attends Grand Valley High School. She is eighteen years old and of Mexican American descent. Naomi was born in Grand Junction, Colorado and grew up on the Western Slope. She has attended schools in the GARFIELD COUNTY SCHOOL DISTRICT 16 for close to ten years. Naomi will graduate from Grand Valley High School with several school honors: Honors Diploma, Key Club Honors and Community Service Honors.

11. Defendant GARFIELD COUNTY SCHOOL DISTRICT 16, is a Colorado independent school district with headquarters and administrative offices located in Parachute, Colorado.

12. Defendant LYNN J. SHORE serves as the President of the Board of Education. As President, he presides at all meetings of the board, signs any written contract to which the school District may be a party, and signs all official reports of the District except when otherwise provided by law. Colo. Rev. Stat. § 22-32-105. He otherwise enjoys the same privileges, responsibilities and authority as other board members. The president must vote on all issues and, except for matters pertaining to the conduct of meetings, has decision-making authority no greater than that of other board members. *Id.* As a board member, Defendant LYNN J. SHORE has, among other duties, the duty to: adopt written bylaws, and to adopt policies and prescribe rules and regulations necessary for the efficient administration of the District; to determine the educational programs to be carried on in the

schools of the District and to prescribe the textbooks for any course of instruction or study in such programs; and to employ and fix the pay of all personnel required to maintain the operations and carry out the educational program of the District. Colo. Rev. Stat. § 22-32-109.  Defendant LYNN J. SHORE is sued in his official capacity.

13. Defendant KIMBERLY S. WHELAN serves as the Vice-President of the Board of Education. In the absence or inability of the president, the vice president has and performs all of the powers and duties of the president.  As a board member, Defendant KIMBERLY S. WHELAN has, among other duties, the duty to: adopt written bylaws, and to adopt policies and prescribe rules and regulations necessary for the efficient administration of the District; to determine the educational programs to be carried on in the schools of the District and to prescribe the textbooks for any course of instruction or study in such programs; and to employ and fix the pay of all personnel required to maintain the operations and carry out the educational program of the District. Colo. Rev. Stat. § 22-32-109.  She is sued in her official capacity.

14. Defendant VINCENT T. TOMASULO serves as the Secretary/Treasurer of the Board of Education.  As Secretary/Treasurer, he takes minutes at all board meetings and attests to any contract to which the District is a party.  Colo. Rev. Stat. § 22-32-106.  He accounts for all district finances, submits spending reports to the board and signs payments made by the District.  Colo. Rev. Stat. § 22-32-107.  As a board member, Defendant VINCENT T. TOMASULO has, among other duties, the duty to: adopt written bylaws, and to adopt policies and prescribe rules and regulations necessary for the efficient administration of the District; to determine the educational programs to be carried on in the schools of the District and to prescribe the textbooks for any course of instruction or study in such

programs; and to employ and fix the pay of all personnel required to maintain the operations and carry out the educational program of the District. Colo. Rev. Stat. § 22-32-109. He is sued in his official capacity.

15. Defendant STACI R. McGRUDER serves as a Board of Education Director. As a board member, Defendant STACI R. McGRUDER has, among other duties, the duty to: adopt written bylaws, and to adopt policies and prescribe rules and regulations necessary for the efficient administration of the District; to determine the educational programs to be carried on in the schools of the District and to prescribe the textbooks for any course of instruction or study in such programs; and to employ and fix the pay of all personnel required to maintain the operations and carry out the educational program of the District. Colo. Rev. Stat. § 22-32-109. She is sued in her official capacity.

16. Defendant KEITH GRONEWOLLER serves as a Board of Education Director. As a board member, Defendant KEITH GRONEWOLLER has, among other duties, the duty to: adopt written bylaws, and to adopt policies and prescribe rules and regulations necessary for the efficient administration of the District; to determine the educational programs to be carried on in the schools of the District and to prescribe the textbooks for any course of instruction or study in such programs; and to employ and fix the pay of all personnel required to maintain the operations and carry out the educational program of the District. Colo. Rev. Stat. § 22-32-109. He is sued in his official capacity.

17. Defendant JENNIFER BAUGH is an employee of Garfield County School District 16 where she currently serves as the District's superintendent. As superintendent, she oversees all officers and employees of the district, appoints all other officers and employees

in the schools, and fixes the compensation for non-teaching employees. Colo. Rev. Stat. § 22-80-106. She is sued in her official capacity.

18. Defendant KELLY MCCORMICK is an employee of Garfield County School District 16 where he serves as principal of Grand Valley High School. Among other duties, he: has administrative and instructional responsibility over the high school; operates and manages the school in accordance with the regulations of the District board of education; submits recommendations to the superintendent regarding hiring, promoting, and dismissing personnel assigned to the high school; and communicates discipline information to teachers and counselors. Colo. Rev. Stat. § 22-32-126. He is sued in his official capacity.

### IV.   FACTUAL ALLEGATIONS

**A. The District Has Routinely Permitted Students to Participate in High School Graduation Ceremonies with Embellished Caps and Gowns.**

19. The District is located in Garfield County and on Colorado's Western Slope. Grand Valley High School is the one high school in the District.

20. Throughout the years, the District has permitted graduating seniors to embellish their graduation regalia (*i.e.*, gown, cap and honor cords) with additional items of personal or cultural significance. The District allowed students to cross the stage and receive their diplomas wearing these personalized items, which include sashes, garlands and flags.

21. Consistent with this permission, students wore cultural regalia such as national flags and leis (Polynesian garlands made of flowers) in the 2021 and 2022 Grand Valley High School graduation ceremonies.

22. For example, in the 2022 Grand Valley High School graduation ceremony, one student crossed the graduation stage wearing a colorful sarape-style sash honoring her Mexican heritage.

23. Also in the 2022 Grand Valley High School graduation ceremony, two other students wore leis constructed from money bills (while crossing the graduation stage and receiving their diplomas. One student wore a ribbon leis decorated with dollar bills, his name and his graduation year. Another student wore a similar leis decorated with flower-shaped bills.

24. In the 2022 Grand Valley High School graduation ceremony, school district officials, including Principal McCormick, stood smiling on the graduation stage and handed diplomas to students, including students wearing cultural regalia such as sashes and lei.

25. In the 2021 Grand Valley High School graduation ceremony, a student wore a Honduran flag draped over his shoulders as he crossed the graduation stage and received his diploma. Two other students wore sashes depicting the Mexican flag as they crossed the stage and received their diplomas.

26. In the 2021 Grand Valley High School graduation ceremony, school district officials, including School Board President Shore and Principal McCormick, presided over the ceremony and stood on the stage as students received their diplomas while wearing cultural regalia.

### B.  Naomi's Request to Wear her Sash in the Graduation Ceremony

27. For Naomi, her Mexican American sash is a symbol that high school graduation is a significant accomplishment, not only for her but also for her family and her ancestors. The sash is a reminder that not all Mexican Americans, including her parents, have the opportunity to graduate from high school and to walk across a graduation stage. By wearing the sash, Naomi represents her family, her identity as a Mexican American, and her culture during this important occasion.

28. The portion of Naomi's sash that features the Mexican flag includes the Mexican national emblem. This emblem is based on the indigenous legend of the founding of Tenochtitlan (now Mexico City).  In the legend, the Aztec people, who had been traveling for many years, eventually reached a large lake where they saw an eagle standing on a nopal cactus and holding a live snake in its beak. The Aztecs understood from prophecy that this meant they should establish their new home in that place, the Valley of Mexico.

29. Naomi's parents are immigrants to the United States from Mexico.  Naomi's maternal grandfather, who helped raise her and with whom she is very close, is from Ocotlán, Jalisco and recalls that his older family members spoke an indigenous language.  The Mexican flag on Naomi's sash represents her family's origin, traditions and languages in Mexico.

30. Naomi's American identity, as expressed by the American flag on her sash, is based on having been born and raised in the United States.  The American flag represents that Naomi feels fully American.  Naomi's Mexican identity, as expressed by the sarape design and Mexican flag on her sash, is based on her connection to her family, her family's roots in Mexico and Mexican ancestors. The Mexican flag represents that Naomi feels fully American as well as fully Mexican. The sash's inclusion of the American *and* Mexican flags demonstrates Naomi's identity as a Mexican American -- a blend of two nations, histories, cultures and languages.

31. At the end of March 2023, as she arranged to graduate with her Honors Diploma, as well as Key Club Honors and Community Service Honors, Naomi became interested in wearing a cultural sash.  As she discussed her idea with a fellow student in her advisory class at Grand Valley High School, Naomi's advisory teacher, Mr. Wardell, overheard the

8

conversation and stated that Naomi could not wear the type of sash she was discussing. Mr. Wardell stated that that was a rule of Principal McCormick.

32. On April 5, 2023, Naomi received a one-page flyer from Grand Valley High School that listed guidelines student decoration of their graduation caps. The guidelines did not address sashes, leis or other regalia worn with or on the graduation gown.

33. On April 6, 2023, Naomi went to the principal's office at Grand Valley High School to ask about the school's policy regarding her sash. Naomi showed the principal's secretary, Ms. Hart, a picture of a serape-style sash that she was considering wearing. Ms. Hart told Naomi that she could not wear that sash, stating that allowing that regalia would "open too many doors." However, Ms. Hart stated that Naomi could wear a money lei during the graduation ceremony.

34. The following day, in a phone call with Naomi's sister-in-law, Principal McCormick affirmed the decision that Naomi could not wear her sash at graduation. Principal McCormick also acknowledged that there was no written school or District policy regarding regalia worn on or over the graduation gown. Following the conversation, Principal McCormick emailed Naomi's sister-in-law a digital copy of the same document that Naomi received on April 5, 2023 regarding the guidelines for decoration of graduation caps.

35. On April 13, 2023, Naomi's sister-in-law emailed Superintendent Baugh regarding Naomi's request to wear a cultural sash. That same day, Superintendent Baugh responded to Naomi's sister-in-law and Naomi, stating that Naomi could not wear an additional item displaying the Mexican flag in the graduation ceremony. Also in that email,

Superintendent Baugh described several messages that the District would permit students to wear on sashes.

   a. Superintendent Baugh stated that graduating students may wear "any regalia that is part of a Native American or Pacific Islander tribe."

   b. Superintendent Baugh also stated that students may wear regalia recognizing "going into a military service."

   c. Superintendent Baugh also stated that students may wear regalia "that represent membership to [sic] a nationally recognized organization such as National Honors Society, 4H, JROTC, etc. that operate in high schools across the country."

   d. Superintendent Baugh also stated that students may wear regalia that "represent other distinctions such as class rank, valedictorian, and salutatorian."

36. Superintendent Baugh also stated that the District practice has been not to allow the display of flags because that would open the door to a student wearing a Confederate flag pin or another flag that would cause offense.  Thus, Superintendent Baugh explained, the District does not permit the wearing of flags at graduation, including, for example, a Ukrainian flag pin.

37. On April 19, 2023, Naomi's older brother gave her, as a graduation gift, a sash to wear at her graduation ceremony.  The sash displays the United States flag and the Mexican flag.  The words "Class of 2023" are embroidered on the sash.  The design of the sash is in the style of a sarape.  This is the sash that Naomi seeks to wear at her graduation ceremony.

38. On May 3, 2023, Naomi, her sister-in-law and Naomi's mother met with Superintendent Baugh in the hope of securing permission for Naomi to wear her sash.  During that meeting, Superintendent Baugh stated that she was unaware of any written policy that prohibited

Naomi from wearing her sash. Superintendent Baugh told Naomi that there are school district policies, and that from those policies school administration, *i.e.* the superintendent and principals, "come up with the procedures and the rules," to carry out those policies.

39. Although she denied Naomi's request, Superintendent Baugh acknowledged that the District permits other forms of cultural regalia, such as money leis, to be worn by students in the graduation ceremony. Superintendent Baugh explained that the ACLU had advocated for Native Americans and Pacific Islanders to wear cultural regalia and that leis made of money signifies good luck for Pacific Islanders.[1]

40. Superintendent Baugh suggested putting the question of wearing cultural regalia at graduation to a student body vote because it would preserve school unity and allow for feedback from the community of students. Superintendent Baugh acknowledged that there was advocacy for the graduation ceremony to allow students to recognize their heritage, especially for students who are Mexican American, but stated that it is the student body that should decide whether graduation should include acknowledgement of students' heritage.

41. In a further attempt to secure permission to wear her sash, Naomi met with Superintendent Baugh and Board of Education President Lynn J. Shore on May 9, 2023. At that meeting, President Shore and Superintendent Baugh acknowledged that there is no written policy prohibiting Naomi from wearing her sash.

---

[1] Pacific Islanders is a term used to describe the original peoples of any of the three major subregions of Oceania (Melanesia, Micronesia, and Polynesia). There are no Pacific Islander Indian entities listed on the periodic publication of federally recognized tribes by the U.S. government. *See* U.S. Department of the Interior, *Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs*, 88 Fed. Reg. 4636 (January 12, 2023).

42. When Naomi mentioned that students had walked the graduation stage with cultural regalia in recent years, President Shore simply stated that District rules prohibited such regalia. Superintendent Baugh again suggested to Naomi that the District conduct a student body vote on the issue.

43. On May 15, 2023, Naomi wrote the District Board of Education members and Superintendent Baugh through her attorneys and requested that the District allow Naomi to wear her Mexican American regalia as she participates in the Grand Valley High School graduation ceremony. The District's legal counsel acknowledged receipt of the letter but did not respond regarding Naomi's request.

44. On May 16, 2023, Naomi attended the regularly-scheduled meeting of the District Board of Education in the hope of persuading District leadership to allow her to wear her sash. In her testimony, she stated:

> I'm a 200 percenter — 100% American and 100% Mexican. I was born in the United States but my parents are Mexican immigrants who came here for a better life . . . They have sacrificed and provided for me in so many ways that I am so beyond grateful for. And also my brothers. I'm proud of who I am and the opportunities that I have.

45. At the end of the Board of Education meeting, President Shore stated that the District's rules regarding cultural regalia would remain in effect and be fully enforced at the 2023 Grand Valley High School graduation ceremony. President Shore further stated that the District would review its graduation regalia rules during the 2023-2024 school year.

### C. The District's Policies Do Not Address Student Graduation Sashes and the District's Rule Imposes Content-Based Restrictions.

46. The District maintains its dress code and graduation policies in a number of documents, including the Student Dress Code, Graduation Exercises, and Flag Displays.

47. The District School Board's policy on student dress code enumerates certain "Unacceptable Items" for the classroom environment, including short skirts and "sunglasses and/or hats worn inside the building." The District's Student Dress Code does not limit students' use of regalia during graduation ceremonies.

48. The District School Board's policy on graduation exercises enumerates certain policies to defray costs with regard to graduation and does not limit students' use of regalia during graduation ceremonies.

49. The District School Board's policies on the District's website do not limit students' wearing of regalia during graduation ceremonies.

50. The District School Board's policy on flag displays, in compliance with Colo. Rev. Stat. § 22-32-109(1)(ii), permits students "to reasonably display the flag of the United States on their own person, personal property, and/or property under their temporary control, such as a desk or locker."

51. The Grand Valley High School Student Handbook enumerates certain dress code "procedures" for the classroom that contain the same "unacceptable items" as those mentioned in the District's dress code. The Grand Valley High School Student Handbook does not prohibit students' use of sashes, leis or other regalia worn on or over graduation robes at graduation ceremonies.

52. Grand Valley High School's rule regarding decoration of graduation caps asks students to "take into consideration the following rules when decorating your graduation cap." The document does not mention regalia worn over or on the graduation gown. The document states that cap decorations cannot "[r]efer to drugs or controlled substances, tobacco, alcohol, or weapons or be of a sexual nature," "denote an affiliation with gangs or which

13

advocate drug use, violence, illegal activity, or disruptive behavior," "include numbers other than the graduation year," or be "obscene, profane, vulgar, or lewd or threaten the safety and welfare of any person." The document offers examples of appropriate cap decorations, including messages that: "thank a parent, grandparent, teacher, or friend," "recognize the university [they] will attending," include "[their] graduation year," indicate "the branch of military [they] will be joining," and display "the flag of a country as recognized by the United Nations."

53. Thus, under the District's rule, Naomi may not wear her sash at graduation which displays the American and Mexican flags, and all students must restrict their sashes to the Superintendent's delineated messages of "part of a Native American or Pacific Islander tribe," "going into a military service," "membership to [sic] a nationally recognized organization" and "distinctions such as class rank, valedictorian, and salutatorian." At the same time, students may decorate their mortar boards in any fashion within the guidelines, including displaying the confederate flag and other messages considered potentially offensive. And, although the District maintains a policy, in compliance with Colo. Rev. Stat. § 22-32-109(1)(ii), that allows students "to reasonably display the flag of the United States on their own person, personal property, and/or property under their temporary control, such as a desk or locker," the District also maintains a rule prohibiting display of any flag, including the U.S. flag, on a student's sash at the graduation ceremony.

## V.   CAUSES OF ACTION

### COUNT 1

*Plaintiff's Claim Against Defendants for Violation of her Right to Freedom of Speech Under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.*

54. Plaintiff re-alleges and incorporates by reference all of the preceding allegations.

14

55. The First Amendment to the U.S. Constitution provides "Congress shall make no law . . . abridging the freedom of speech[.]"

56. Under the First Amendment, applicable to the states through the Fourteenth Amendment, students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). When a school regulates student speech on the basis of its viewpoint, the school must justify its regulation, whether that speech is sponsored by the school or is private speech of the student. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 35–36 (10th Cir. 2013).

57. Defendants' rule, which prohibits Naomi from wearing a sash displaying the American and Mexican flags but permits students to wear sashes celebrating membership in a "Native American or Pacific Islander tribe" or entry "into a military service" is, on its face, a viewpoint-based regulation of speech. The District's rule cannot survive review because it is neither reasonably related to legitimate pedagogical concerns nor based on a reasonable forecast that the speech would cause substantial disruption to the school environment. Thus, the District has infringed on Naomi's right to free speech by engaging in viewpoint discrimination.

## COUNT 2

*Plaintiff's Claim Against Defendants for Violation of her Right to Freedom of Speech under the Colorado Constitution.*

58. Plaintiff re-alleges and incorporates by reference all of the preceding allegations.

59. The Colorado Constitution guarantees that "No law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty[.]"  Article II, Section 10 "goes

15

beyond the prohibition on governmental interference with speech contained in the First Amendment to include an affirmative declaration that Colorado citizens "*shall* be free to speak, write or publish[.]" *Denver Pub. Co. v. City of Aurora*, 896 P.2d 306, 309 n.4 (Colo. 1995) (quotations omitted).

60. Colorado courts have emphasized that Article II, Section 10 "provides greater protection of free speech than does the First Amendment[.]" *Lewis v. Colorado Rockies Baseball Club, Ltd.*, 941 P.2d 266, 271 (Colo. 1997); *People v. Iannicelli*, 454 P.3d 314, 320 n.7, *aff'd on other grounds*, 449 P.3d 387 (Colo. App. 2017).  Because the District rule cannot survive the stringent scrutiny required by Article II, Section 10, the District has infringed on Naomi's right to free speech.

## COUNT 3

*Plaintiff's Claim Against Defendants for Violation of her Right to Display the Flag of the United States on her Person (Colo. Rev. Stat. § 22-32-109(1)(ii))*

61. Plaintiff re-alleges and incorporates by reference all of the preceding allegations.

62. The Colorado Education Code requires school districts to:  "adopt a policy within ninety days after April 28, 2006, to ensure that the right of school district employees and students to display reasonably the flag of the United States shall not be infringed with respect to the display:  (I) On an individual's person; or (II) On an individual's personal property or property that is under the temporary control of an employee or a student, including but not limited to a desk top or a locker."  Colo. Rev. Stat. § 22-32-109(1)(ii).

63. By prohibiting Naomi from wearing her sash, which depicts the American flag as well as the Mexican flag, the District has violated Colorado's law guaranteeing the right of students to display the American flag.

16

## VI.   ATTORNEY'S FEES

64. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable attorney's fees, expenses, and costs.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter an order:

65. Declaring that Defendants' rule prohibiting Plaintiff from wearing a Mexican American sash at graduation violates:

    a. her right to freedom of speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

    b. her right to freedom of speech as guaranteed by Article II, § 10 of the Colorado Constitution;

    c. her right to display the flag of the United States on her person as guaranteed by Colo. Rev. Stat. § 22-32-109(1)(ii);

66. Enjoining Defendants, their agents and successors in office, and all persons acting in concert with them from enforcing the rule prohibiting Plaintiff from wearing her Mexican American sash at graduation;

67. Directing Defendants, their agents and successors in office, and all persons acting in concert with them to take appropriate action to ensure uniform compliance with this Court's order by school district officials and employees;

68. Granting such additional relief as the interests of justice may require.

Dated: May 24, 2023

Respectfully submitted,

/s/ *Jennifer H. Weddle*
Jennifer H. Weddle, Co. Bar No. 32068
Greenberg Traurig, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
(303) 572-6565
weddlej@gtlaw.com

/s/ *Kenneth Parreno*
Nina Perales*
Fátima Menendez*
Kenneth Parreno*
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205
(210) 224-5476
kparreno@maldef.org

* Applications for admission pending

*Counsel for Plaintiff Naomi Peña Villasano*