IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01317-RMR

NAOMI PEÑA VILLASANO,

    Plaintiff,

v.

GARFIELD COUNTY SCHOOL DISTRICT 16,
LYNN J. SHORE, in his official capacity as President of the Garfield County School District 16 Board of Education;
KIMBERLY S. WHELAN, in her official capacity as Vice-President of the Garfield County School District 16 Board of Education;
VINCENT T. TOMASULO, in his official capacity as Secretary/Treasurer of the Garfield County School District 16 Board of Education;
STACI R. MCGRUDER, in her official capacity as a Director of the Garfield County School District 16 Board of Education;
KEITH GRONEWOLLER, in his official capacity as a Director of the Garfield County School District 16 Board of Education;
JENNIFER BAUGH, in her official capacity as Superintendent of Garfield County School District 16; and
KELLY MCCORMICK, in his official capacity as Principal of Grand Valley High School,

    Defendants.

---

**DEFENDANTS' RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

---

Defendants Garfield County School District 16 (the "School District"), Lynn J. Shore, Kimberly S. Whelan, Vincent T. Tomasulo, Staci R. McGruder, Keith Gronewoller, Jennifer Baugh, and Kelly McCormick, by and through their undersigned attorneys, hereby respond to Plaintiff's emergency motion for temporary restraining order, as follows:

## INTRODUCTION

"At a high school graduation, teachers and principals must and do retain a high degree of control over the precise contents of the program, the speeches, the timing, the movements, the dress, and the decorum of the students." *Lee v. Weisman*, 505 U.S. 577, 597 (1992). This is the case at the School District, where rules for graduation dress permit student participants to decorate their graduation caps for the purpose of personal expression, but prohibit them from wearing personal sashes over their traditional graduation gowns.

Plaintiff Naomi Peña Villasano ("Ms. Villasano"), a School District graduand set to participate in the School District's upcoming graduation exercises, sought an exception to the rule that would allow her to wear a personal sash decorated with the flag of Mexico (and, apparently, the United States) over her gown. School District officials informed Ms. Villasano that, while she could adorn her cap with the Mexican flag pursuant to its rules for graduation dress, she could not wear the sash. Asked to elaborate upon the reasons for its rules, the School District cited the desire to not open the door to sashes that could offend, to encourage unity among the graduates, reserving recognition to school-related achievements, and to not change the rules without first engaging in the democratic process—all reasons courts have recognized as legitimate pedagogical purposes justifying regulation of school-sponsored speech.

Rejecting the School District's offer to help "recognize her accomplishment" (Motion, p. 6) in a way that did not violate the School District's rules, Ms. Villasano subsequently sued. She asserted claims for violation of free speech rights under the U.S. and Colorado Constitutions and under a state law requiring school districts to adopt a policy to ensure the right of students to "display reasonably the flag of the United States" on her person. On extremely short notice, Ms.

2

Villasano has also moved for a temporary restraining order that would require the School District to reverse its rules for student dress at the graduation exercises in order to permit her to wear her personal sash. For the reasons stated below—summarized as briefly as possible due to time constraints—the Court should deny Ms. Villasano's motion.

## BACKGROUND

The School District supplements the record with the following evidence from the declaration of School District Superintendent Jennifer Baugh attached hereto as Exhibit A:

a. The School District closely controls the graduation ceremony for students who complete the School District's academic program. This includes control over the content of the program, the speeches, and the participating students' dress and decorum.

b. With respect to student dress at the graduation ceremony, the School District does not permit students to wear personal sashes over their traditional graduation gowns. Students are given cords to signify academic honors, school-sponsored activities, and military stoles to wear if they are eligible. Since 2020, students have been permitted to decorate their mortar boards on their graduation caps, and those decorations can and very often do express pride in culture and heritage. At least one student who wanted to wear a lei as a legitimate cultural expression that could only be worn around the neck (not on a mortar board) was permitted to do so.

c. The School District's rule against personal sashes during the graduation ceremony is grounded in several concerns, including its interest in avoiding opening doors to speech that could offend others during a solemn, important ceremony in many families' lives. Restricting the regalia also reserves recognition to future military service, academic distinction, or school-

sponsored activities. Moreover, having consistent regalia demonstrates and encourages unity of the student body. The School District's graduation ceremony is for all students, not just one.

        d.      There may have been students in the past who might have worn sashes, sarapes, and other symbols of their culture and heritage at graduation. This was against the rules and I understand they put them on at the last minute before going on stage without seeking or receiving permission. In the interest of avoiding disruption to the ceremony that would affect all the graduates and their families, I understand that no district staff members intervened. Again, this is a ceremony about the class, not an individual.

        e.      The School District's graduation ceremony is steeped in symbolic traditions that signify the graduates' academic accomplishments and service to the community. It is a reflection of local community values and decisions and an expression of pride in the graduates' accomplishments and future endeavors. We believe that changing our rules and practices first requires a democratic process. To that end, the School District was prepared on April 13, 2023 to work with Ms. Villasano to bring the question of expressing students' culture and heritage in the graduation ceremony to the senior class for their thoughts and wishes within an inclusive and a democratic process. We did so because we believed she made a worthy point about the importance of expressing students' culture and heritage. However, Ms. Villasano did not demonstrate interest in working with the School District to further that process.

        f.      Granting Ms. Villasano's request, less than 12 hours before the graduation ceremony, would diminish the experiences of the class of 2023 and impinge upon the community's local control of the graduation ceremony.

## STANDARD OF DECISION

"A temporary restraining order is extraordinary relief." *Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Corp.*, 2009 WL 5216938, at *1 (D. Colo. Dec. 23, 2009) (unpublished). A party seeking one "must show 1) a substantial likelihood that the movant eventually will prevail on the merits; 2) that the movant will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) that the injunction, if issued, would not be adverse to the public interest." *Id.*, *citing Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

What is more, because the injunction Ms. Villasano seeks would alter the status quo and afford her all the relief her complaint for injunctive relief seeks at the conclusion of a full trial on the merits, her request is for a "specifically disfavored injunction." *Id.*, *citing O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). This means that she "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms,[1] and may not rely on [the Circuit's] modified likelihood-of-success-on-the-merits standard." *Id.*, *citing Schier*, 427 F.3d at 1261.

## ARGUMENT

**A. Ms. Villasano Cannot Make a Strong Showing of Likelihood of Success on the Merits.**

Ms. Villasano presses free speech claims under the U.S. and Colorado Constitutions and a claim for violation of § 22-32-109(1)(ii), C.R.S. For the reasons stated below, she has not shown

---

[1] The "balance of harms" includes all the remaining factors. *See Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) ("movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor").

a likelihood of success on her claims, let alone a strong likelihood, that would allow the Court to grant a temporary restraining order.

1. Free Speech Claims

    a. *Hazelwood* Scrutiny Applies.

Ms. Villasano devotes much of her motion to arguing that the issue of student graduation dress falls under the category of "private student speech," governed by *Tinker v. Des Moines Ind. Comm. Sch. Dist.*, 39 U.S. 503 (1969), rather than "school-sponsored speech," governed by *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988). School district regulation of the latter is permitted "as long as its action was reasonably related to pedagogical concerns." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1229 (10th Cir. 2009). Ms. Villasano seeks to avoid this standard, but her argument is contrary to clear precedent.

The Tenth Circuit teaches that speech during a school district graduation ceremony is "school-sponsored speech" covered by *Hazelwood*. *Corder*, 566 F.3d at 1229 (2009)*, citing Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918 (10th Cir. 2002). *Hazelwood* governs speech "that is so closely connected to the school that it appears the school is somehow sponsoring the speech and derives from such factors as the level of involvement of school officials in organizing and supervising the event." *Id.* at 1228. The Tenth Circuit instructs courts considering whether the standard applies to "appraise the level of involvement of school officials in organizing and supervising the contested speech," and gave an example of an activity that "may be closely tied to a school, yet not school-sponsored speech bearing the school's imprimatur": activities "sponsored by outside organizations who happen to use school facilities after school hours." *Id. Corder* concluded that the speech during the graduation ceremony was school-sponsored speech

based upon the control the school district exercised over the matter in advance of graduation. *Id.* at 1129. *See also Bear v. Fleming*, 714 F.Supp.2d 972, 989-90 (D.S.D. 2010) ("A graduation proceeding is a theatrical production in a sense—the actors, director, and stage crew, or rather the students, administrators, teachers, and staff members, hope to convey a message the audience will understand and appreciate. This is not a case where [the student's] speech happens to occur in a school setting as in *Tinker*. Rather, it is the school-sponsored event—the graduation exercises— which provide the forum and opportunity for [the student's] speech. This speech would occur during a school-sponsored activity that 'students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school.' *Hazelwood*, 484 U.S. at 271, 108 S.Ct. 562. This fact places [the student's speech case concerning a graduation ceremony] squarely within the scrutiny standard of *Hazelwood*.").

Like in *Corder*, the School District strictly controls the matter of student dress at the graduation ceremony. The School District inarguably controls the entire program and prescribes what can be worn by student participants. Contrary to Ms. Villasano's argument on page 10 of her Motion, the School District *does not* afford "students wide latitude for self-expression at the high school graduation ceremony." While it permits personal expression on the students' graduation caps, it strictly limits what can be worn over their gowns. And *that* is the "contested speech" at issue. *See Corder*, 566 F.3d at 1229.

Accordingly, *Hazelwood* scrutiny applies, meaning that there is no free speech violation "as long as [the School District's] action was reasonably related to pedagogical concerns." *Corder*, 566 F.3d at 1229.

7

> b. *The School District's Rule Prohibiting Students from Wearing Personal Sashes Over Their Graduation Robes at the School District's Graduation Ceremony is Reasonably Related to Pedagogical Concerns.*

"The universe of legitimate pedagogical concerns is by no means confined to the academic … [for it includes] discipline, courtesy, and respect for authority." *Fleming*, 298 F.3d at 925. "A graduation ceremony is an opportunity for the School District to impart lessons on discipline, courtesy, and respect for authority." *Corder*, 566 F.3d at 1229.

Ms. Villasano alleges that the School District's rule against personal sashes was related to its concerns that it would "open too many doors" (Motion, p. 5); would open the door to allow other material that could be offensive to others (Motion, p. 6); that there was insufficient time for the School District Board of Education to "properly consider changes to its rules and traditions prior to graduation," which would be reviewed during the following school year (Motion, pp. 7-8); that the student body should consider a vote to change the rules (Verified Complaint, ¶¶ 40 and 42); that making exceptions would detract from reservation of recognition of future military service, academic distinction, or school-sponsored activities (Verified Complaint, ¶ 35(b-d)); and to preserve school unity (Verified Complaint, ¶ 40).

Ms. Villasano has no likelihood of success on her claim because courts—including other District Court Judges in this District—have held that the very School District concerns Ms. Villasano placed in the record satisfy the *Hazelwood* standard.

The School District's concern about opening the door to personal sashes of other types that might offend others has been repeatedly recognized as a legitimate pedagogical concern. *Corder* so recognized a school district's "effort to preserve neutrality on matters of controversy within a school environment." 566 F.3d at 1230; *see also id.*, citing *Fleming*, 298 F.3d at 925-26 ("noting

8

that several other courts have established that the pedagogical test may be satisfied 'simply by the school district's desire to avoid controversy within a school environment'"); *Griffith v. Caney Valley Pub. Schs.*, 157 F.Supp.3d 1159, 1164 (N.D. Okla. 2016) (recognizing as a legitimate pedagogical concern that the graduation dress "policy avoids the controversy that could potentially arise from allowing each individual graduating student to wear his or her own religious, cultural, or familial emblems of personal success or achievement'); *see also* Emotions Run High at Columbine Graduation, South Coast Today, May 23, 1999, https://www.southcoasttoday.com/story/news/nation-world/1999/05/23/emotions-run-high-at-columbine/50526690007/ ("A federal judge on Friday upheld the Jefferson County School District's ban on gown adornments because he was concerned one kind of ornament would open the door to others that could be offensive. 'This situation is not an unreasonable restriction ... no one will be free of the sympathy of what happened,' said U.S. District Judge Walker Miller. 'But the school's judgment must also be respected.'").

The School District's concern that changes to the tradition should involve a democratic process, i.e., a student vote or a community/political process through the School District Board of education, is likewise a legitimate pedagogical one. *Fleming*, 298 F.3d at 931 ("Exposing students to the democratic process" is a legitimate pedagogical concern). As is reserving "special recognition for student achievement or participation in school-related activities," as the School District has done with the rule. *Bear*, 714 F.Supp.2d at 989 (emphasis added).

Finally, the concept of encouraging class unity with graduation dress rules has repeatedly been cited as a legitimate pedagogical concern. *Bear*, 714 F.Supp.2d at 989 ("The school board has a legitimate interest in honoring its graduating seniors and preserving the unity of the class at

9

this most auspicious event.") (emphasis added); *Griffith*, 157 F.Supp.3d at 1164 ("This, in turn, raises the question of whether the school's current [graduation] dress policy is reasonably related to a legitimate pedagogical concern. The court concludes that it is. Such a policy promotes unity, discipline, and respect for authority…"); *see also* Appeals Court Allows Student-Led Graduation Prayers, EDUCATION WEEK, June 3, 1998, https://www.edweek.org/education/appeals-court-allows-student-led-graduation-prayers/1998/06 ("Elsewhere on the graduation legal front, a federal district judge in Denver last month refused to issue an injunction that would have allowed two students to wear African kente-cloth sashes during their commencement exercises. The two African-American seniors at Arvada High School in the 87,000-student Jefferson school district near Denver had hoped to wear the colorfully woven cloths during the ceremony on May 26. But the school's graduation agreement, which all seniors must sign, prohibits making changes to decorate a cap and gown. … The students and their families sued the district in state court, with the help of the American Civil Liberties Union. They cited their First Amendment right to free speech, as well as Colorado constitutional and statutory guarantees of free expression for students. The district removed the case to federal district court, where U.S. District Judge Richard P. Matsch rejected the request for an injunction. 'I believe the unity purpose is a legitimate governmental interest here in the limitation of this ceremony,' Judge Matsch said May 19 in a ruling from the bench."). All told, the School District's rule against students wearing personal sashes easily surpasses *Hazelwood* scrutiny.

Ms. Villasano argues at various points in her Motion that the School District has committed viewpoint discrimination by allowing others to wear flags or personal sashes on stage but denying her request to do so. This argument suffers from multiple fatal defects. As a threshold matter, the

Tenth Circuit has clearly held "that *Hazelwood* does not require educators' restrictions on school-sponsored speech to be viewpoint-neutral." *Fleming*, 298 F.3d at 928. Ms. Villasano's counsel's argument to the contrary on page 20 of the Motion is simply wrong. Second, what is the "viewpoint" that Ms. Villasano claims the School District is discriminating against? She alleges another student was permitted to wear a "sash honoring her Hispanic heritage" (Verified Complaint, ¶ 22) and two others "wore sashes depicting the Mexican flag as they crossed the stage and received their diplomas" (Verified Complaint, ¶ 25). And if the School District was so discriminating, why would it allow all student participants, including Ms. Villasano, to decorate their cap with the image of a flag of their choice?

Finally, the students Ms. Villasano identifies who wore sashes or flags over their gowns were not permitted to do so; they pulled out the sashes shortly before they took the stage and the School District did not stop the students because it did not want to disturb the proceedings. The School District has permitted students to wear leis as a legitimate cultural expression that could only be worn around the neck—not on the top of a cap—and could contain no messaging containing possibly offensive content. This evidence does not detract from the School District's legitimate pedagogical concerns behind its rule against personal sashes at the graduation ceremony.

2. <u>State Law Statutory Claim.</u>

Ms. Villasano asserts a state law claim pursuant to § 22-32-109(1)(ii), C.R.S., which provides that school district boards of education have the duty: "To adopt a policy within ninety days after April 28, 2006, to ensure that the right of school district employees and students to display reasonably the flag of the United States shall not be infringed with respect to the display:

11

(I) On an individual's person; or (II) On an individual's personal property or property that is under the temporary control of an employee or a student, including but not limited to a desk top or a locker."

As a threshold matter, Ms. Villasano fails to establish that this statute even supports a private right of action. The statute does not provide for one on its face, and no court seems to have yet addressed the issue. *See Skipworth v. Bd. of Educ. of Woodland Park Sch. Dist, Re-2*, 874 P.2d 487, 489 (declining to address the issue). Even so, the statute does not require boards of education to adopt a policy permitting students to display the American flag in any way the student desires; instead, the display must be "reasonable." And the School District indeed permits students such as Ms. Villasano to display the American flag on their caps at the graduation ceremony. Moreover, while Ms. Villasano's sash includes the colors of the American flag and a few stars; it does not actually depict the American flag. The statute does not require the District to allow students to display flag-like symbols.

### B. Ms. Villasano Cannot Establish Irreparable Harm, Nor Does the Balance of Harms Favor Her.

Ms. Villasano relies completely upon her allegation that the School District has violated her constitutional rights in arguing that she has suffered irreparable injury, that the threatened harm she may suffer if the injunction is not granted outweighs the harm granting it would cause the School District, and that the injunction is in the public interest. However, as explained above, Ms. Villasano has failed to demonstrate the requisite likelihood of success on her First Amendment claims. She is entitled to no such presumption that she has satisfied these elements.

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation omitted).

"[M]erely serious or substantial" harm is not enough. *Id.* Additionally, "the injury complained of" must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id*. Because Ms. Villasano has not established irreparable injury, her request for a preliminary injunction should be denied. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) ("[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."). Ms. Villasano has been afforded an opportunity for expression of her heritage during the graduation ceremony--decorating her cap. Even in public fora—as opposed to the school-sponsored nature of a graduation ceremony—"the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places." *Harmon v. City of Norman, Okla.*, 61 F.4th 779, 789 (10th Cir. 2023). Ms. Villasano may also don her sash before and after the graduation ceremony.

On the other hand, "the public interest weighs heavily in favor of the ability of the [School District] to control the uniformity and formality of the graduation ceremony for all students." *Griffith v. Caney Valley Public Schools*, 2015 WL 2451226, *10 (N.D. Okla. May 21, 2015) (unpublished). As the *Bear* court held:

> Graduation exercises are important not only to the students but also to schools, communities, families, and the public. The tradition of the cap and gown is time-honored and is part of the very fabric of the academic experience throughout the nation. The public expects regularity and solemnity in graduation proceedings. To surrender control of graduation proceedings to students runs the risk of undermining the high standards the public expects.

714 F. Supp.2d at 991.

## CONCLUSION

For these reasons, Ms. Villasano's request for a temporary restraining order must be denied.

RESPECTFULLY SUBMITTED this 25th day of May, 2023.

                SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

                By: *s/ Michael Brent Case*
                    Michael Brent Case
                    Holly Ortiz
                    1120 Lincoln Street, Suite 1308,
                    Denver, CO  80203
                    (303) 595-0941
                    bcase@semplelaw.com
                    hortiz@semplelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of May, 2023, a correct copy of the foregoing **DEFENDANTS' RESPONSE TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** was filed via CM/ECF and served on the following:

Jennifer H. Weddle, Esq.
Greenberg Traurig, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202

Nina Perales, Esq.
Fátima Menendez, Esq.
Kenneth Parreno, Esq.
Mexican American Legal Defense and Educational Fund (MALDEF)
110 Broadway Street, Suite 300
San Antonio, TX 78205

*Counsel for Plaintiff Naomi Peña Villasano*

                By: *s/ Kathleen Schmidt*